# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re | Case No. 16-31791-WRS |
| | Chapter 13 |
| CONSOELLA RANDOLPH FOWLER, | |
| Debtor. | |

| | |
|---|---|
| In re | Case No. 19-32243-WRS |
| | Chapter 13 |
| ANBRIAL ALEXIS LEWIS, | |
| Debtor. | |

## AMENDED MEMORANDUM DECISION

These two Chapter 13 cases came before the Court for telephonic hearings on October 22, 2020, on Debtors' respective Motions to Modify pursuant to 11 U.S.C. § 1329(d) and Trustee's corresponding Objections. For the reasons set forth below, Trustee's Objections are overruled, and Debtors' respective Motions to Modify are granted.

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. *In re Consoella Randolph Fowler* (16-31791)

Debtor, Consoella Randolph Fowler (hereinafter "Fowler"), filed a petition for relief under Chapter 13 of the Bankruptcy Code on July 7, 2016. She filed her first Chapter 13 Plan on July 12, 2016, and an Amended Chapter 13 Plan on August 11, 2016. (Docs. 16 & 24).[1] The Amended Chapter 13 Plan proposed to pay the Chapter 13 Trustee $105 every two weeks for 60 months to

---

[1] All docket entries referenced in this subsection are from *In re Fowler*, Case No. 16-31791.

pay the balance of the filing fee; attorney's fee; two secured creditors, One Stop Cash and One Main Financial, on debts secured by vehicles; and a pro rata participation "POT" of $2,000 for the benefit of her unsecured creditors.[2] (Doc. 26). Fowler's Amended Chapter 13 Plan was confirmed on September 19, 2016. (Doc. 28).

Almost three years into the five-year repayment plan, Trustee filed a Motion to Dismiss Fowler's case on September 3, 2019, due to a lapse in plan payments. (Doc. 31). In the motion, Trustee asserted that Fowler had an overall pay record of 58.86% and was delinquent $3,498.75 in plan payments. In opposition to Trustee's motion, Fowler claimed the default resulted from a decrease in income due to her retirement from work, but averred that her family would help her make her plan payments going forward, and that a payment of $210 was in transit to Trustee. (Doc. 32).

Trustee's objection came before this Court on October 3, 2019, where the Court continued the hearing until January 9,2020, in order to monitor Fowler's efforts to resume regular plan payments. Prior to the January 9, 2020 hearing, Trustee filed a status report on Fowler's progress, noting that Fowler made a payment of $210 in September of 2019, two $130 payments in October of 2019, two $130 payments in November of 2019, and one $130 payment in December of 2019. (Doc. 36). The status report further noted that Fowler's overall pay record had improved to 63.95% and that her overall delinquency had decreased to $3,368.75. Despite Fowler's steady resumption of plan payments, Trustee noted that in order to restore feasibility, Fowler's plan payments needed to increase from $105 bi-weekly to $126 bi-weekly. At the January 9, 2020 hearing, Fowler agreed

---

[2] In the context of Chapter 13 Plans, "POT" stands for "Payment Over Time," and represents the cumulative amount of money available to distribute to a debtor's unsecured creditors.

-2-

to the increase in plan payments and the Court increased Fowler's plan payments to $126 bi-weekly and denied Trustee's motion to dismiss the case. (Doc. 37).

The docket indicates that Fowler came out of retirement in the spring of 2020, as indicated by an Income Withholding Order entered on June 5, 2020. (Doc. 40). Fowler's new employment was short lived; an Order Releasing Wages entered on June 15, 2020, and Fowler amended Schedule I on July 31, 2020 to reflect that her only sources of income were Social Security and a small pension benefit. (Docs. 41 & 42, respectively).

On August 4, 2020, Fowler moved to modify her Chapter 13 Plan under 11 U.S.C. § 1329(d) to reduce her plan payment from $126 bi-weekly to $125 monthly and extend the length of her plan from 60 to 84 months due to the effects of the COVID-19 pandemic. (Doc. 43).[3] Specifically, Fowler claimed that she lost her new employment due to the economic effects of the COVID-19 pandemic, and that several of her close family members contracted COVID-19, which caused her to incur expenses relating to their care. While Fowler's proposed plan reduced her monthly plan payment and the specified monthly payments to her secured creditors, the modified plan did not reduce the total amount paid to any creditor.

Trustee objected to Fowler's modified plan due to Fowler's substantial pre-COVID-19 default on plan payments. Trustee asserted that but for Fowler's pre-COVID-19 default, she would have paid out her case in full prior to the enactment of § 1329(d) on March 27, 2020. (Doc. 50).

---

[3] Fowler amended her motion and proposed modified plan on August 24, 2020, for technical adjustments, but these adjustments did not change the plan payment or plan length proposed in her August 4, 2020 Motion to Modify. (Doc. 47).

## B.  *In re Anbrial Alexis Lewis* **(19-32243)**

Debtor, Anbrial Alexis Lewis (hereinafter "Lewis"), filed a petition for relief under Chapter 13 of the Bankruptcy Code on August 19, 2019.  She filed her first Chapter 13 Plan with her Petition, and an Amended Chapter 13 Plan on October 17, 2019. (Docs. 6 & 19).[4]  The Amended Chapter 13 Plan proposed to pay the Chapter 13 Trustee $150 for the first month of her plan, then $238 every month for the remaining 59 months in order to pay the balance of the filing fee; attorney's fee; two secured creditors, Colonial Auto Finance and America's Car Mart, Inc., on debts secured by vehicles; and nothing to the unsecured creditors. (Doc. 19).  The plan further proposed to avoid the judicial lien of Guardian Credit Union and assume a residential lease with Sanders Properties, LLC. (*Id.*)  Trustee objected to Lewis' plan on feasibility grounds based on Lewis' 39% pay record at the time.[5]  (Doc. 17).  The Court confirmed Lewis' Amended Chapter 13 Plan on December 19, 2020.  (Doc. 32).

Trustee filed a Motion to Dismiss Lewis' case on June 23, 2020, due to a lapse in plan payments. (Doc. 37).  In the motion, Trustee asserted that Lewis had not tendered a payment to Trustee since March 6, 2020, had an overall pay record of 43.56%, and was delinquent $1,428 in plan payments.  In opposition to Trustee's motion, Lewis claimed the default resulted from a decrease in her hours at work due to the COVID-19 pandemic. (Doc. 38).

The Court set Trustee's Motion to Dismiss for hearing on August 6, 2020.  On July 28, 2020, Trustee filed her first status seport on Lewis' case, which indicated that Lewis had still not

---

[4] All docket entries referenced in this subsection are from *In re Lewis*, Case No. 19-32243.

[5] Trustee also objected to Lewis' plan because the initial plan did not provide for the secured claim of America's Car Mart, Inc.  Lewis' Amended Chapter 13 Plan provided to pay America's Car Mart, Inc., thus satisfying that portion of Trustee's Objection.

-4-

tendered a payment to Trustee since March 6, 2020, her pay record had fallen to 39.81%, her total

delinquency had risen to $1,666, and that in order to preserve feasibility, Lewis' plan payments

had to increase to $255 per month.  (Doc. 41).  At the August 6, 2020, hearing, the Court continued

the matter until November 5, 2020, in order to monitor Lewis' efforts to resume regular plan

payments.

On August 4, 2020, two days before the first hearing on Trustee's Motion to Dismiss,

Lewis moved to modify her Chapter 13 Plan under 11 U.S.C. § 1329(d) to reduce her plan payment

from $238 monthly to $175 monthly and extend the length of her plan from 60 to 84 months due

to the effects of the COVID-19 pandemic.  (Doc. 42).  Lewis' proposed modified plan did not

reduce the total amount paid to any creditor.

Lewis claimed her hours at her employment were reduced in March of 2020 due to the

economic effects of the COVID-19 pandemic on the health care industry.  At the time the Court

confirmed Lewis' plan, Lewis was employed at Baptist Health.  Based on the release of her Income

Withholding Order on December 23, 2019, the record suggests that Lewis' employment with

Baptist Health ended soon after.  (Doc. 34).  The record further suggests that Lewis subsequently

gained employment with Home Instead Senior Care in January of 2020.  (Doc. 46).

Trustee objected to Lewis' modified plan due to Lewis' pre-COVID-19 default on plan

payments and continued failure to make plan payments since March 2020.  In her motion, Trustee

asserted that Lewis had not provided supporting documentation relating to a loss of hours due to

the COVID-19 pandemic.  (Doc. 48).  At the October 22, 2020 hearing on Lewis' Motion to

Modify, Trustee stated that Lewis tendered a $175 payment in August of 2020, but that her overall

pay record was approximately 39%.  Counsel for Lewis stated Lewis had a strong pay record prior

Case 16-31791   Doc 57   Filed 11/13/20   Entered 11/13/20 16:01:39   Desc Main
Document    Page 5 of 11

to March of 2020 and that he provided Trustee with documentation supporting Lewis' claim of a

reduction in hours at work.[6]

## II. Law

### A. Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and the District Court's General

Order of Reference dated April 25, 1985.  This is a core proceeding under 28 U.S.C. §

157(b)(2)(L).  This is a final order.

### B. Chapter 13 Plan Modifications Generally

The Bankruptcy Code allows a debtor, trustee, or unsecured creditor to request a

modification of a confirmed Chapter 13 Plan in order to

> (1) increase or reduce *plan payments* on a particular claim; (2)
> extend or reduce the *time* for plan payments; (3) alter the distribution
> to a creditor under the plan to account for nonplan payments made
> to that creditor; or (4) reduce the amount to be paid under the plan
> by the amount the debtor pays to purchase health care insurance
> (subject to certain provisos and exceptions).

*In re Smith*, 600 B.R. 570, 576 (Bankr. S.D. Tex. 2019) (summarizing 11 U.S.C. § 1329(a)(1)-(4))

(emphasis in original).  Debtors are not required to "make any threshold showing of a change in

---

[6]The Court notes that according to the most recent status report filed by Trustee in relation to the Motion to Dismiss
Lewis' case, Trustee received a $238 payment on November 13, 2019, a $238 payment on December 16, 2019, a
$238 payment on January 15, 2020, and a $238 payment on March 6, 2020.  (Doc. 27).

-6-

circumstances before proposing a modification to a confirmed plan under § 1329." *In re Guillen*, 972 F.3d 1221, 1230 (11th Cir. 2020); *In re Thomas*, 291 B.R. 189, 195-96 (Bankr. M.D. Ala. 2003).  However, a proposed modification under § 1329(a) must meet the requirements of §§ 1325(a), 1322(a), 1322(b), and 1323(c).  11 U.S.C. § 1329(b)(1).  Additionally, "[t]he plan as modified still must satisfy the best interests of creditors test[, a]nd the modification must have been proposed in good faith." *Guillen*, 972 F.3d at 1229 (citations omitted).

Unlike confirmation under § 1325, confirmation under § 1329 is discretionary.  *Compare* 11 U.S.C. § 1325(a) with 11 U.S.C. § 1329(a); *see also Guillen*, 972 F.3d at 1229 ("Even where modified plans satisfy these express limits, the statute reserves to the discretion of the bankruptcy court whether to confirm a modified plan.").  As the Eleventh Circuit noted, "[n]othing prevents a bankruptcy court from refusing to confirm a modified plan put before it." *Guillen*, 972 F.3d at 1229.  Further, "bankruptcy courts retain 'ample powers to prevent successive or abusive attempted modifications.'" *Id.* (quoting *In re Hoggle*, 12 F.3d 1008, 1011-12 (11th Cir. 1994)).

## C. The CARES Act and 11 U.S.C. § 1329(d)

In response to the COVID-19 pandemic, the President signed the Coronavirus Aid, Relief, and Economic Security Act (hereinafter "the CARES Act") into law on March 27, 2020.  Pub. L. 116-136, 134 Stat. 281.  The CARES Act amended 11 U.S.C. § 1329 by adding the following subsection:

> (d)(1) Subject to paragraph (3), for a plan confirmed prior to the date of enactment of this subsection, the plan may be modified upon the request of the debtor if–

(A) the debtor is experiencing or has experienced a material financial hardship due, directly or indirectly, to the coronavirus disease 2019 (COVID-19) pandemic; and

(B) the modification is approved after notice and a hearing.

(2) A plan modified under paragraph (1) may not provide for payments over a period that expires more than 7 years after the time that the first payment under the original confirmed plan was due.

(3) Sections 1322(a), 1322(b), 1323(c), and the requirements of section 1325(a) shall apply to any modification under paragraph (1).

11 U.S.C. § 1329(d). Unlike modification under § 1329(a), only the debtor may request a modification under § 1329(d). This newly-created subsection is not a permanent addition to the Bankruptcy Code; § 1329(d) will sunset on the one-year anniversary of the enactment of the CARES Act. CARES Act § 1113(b)(2)(A)(iii), (B).

From the plain language of the statute, a debtor must clear two hurdles in order to modify a plan under 11 U.S.C. § 1329(d): "(1) a debtor's plan must have been confirmed by March 27, 2020, and (2) a debtor must be 'experiencing or has experienced a material financial hardship due, directly or indirectly, to' COVID-19." *In re Gilbert*, 2020 WL 5939097 *3 (Bankr. E.D. La. Oct. 6, 2020) (citation omitted).

**D. Fowler and Lewis May Modify their Respective Plans under 11 U.S.C. § 1329(d)**

Returning to the two cases at bar, it is clear that both Fowler and Lewis qualify for modification under 11 U.S.C. § 1329(d). First, both Fowler and Lewis had confirmed plans on March 27, 2020. Second, both suffered a material financial hardship due to the COVID-19 pandemic. Even though Fowler lives on a fixed income consisting of Social Security and a small

-8-

pension, that does not mean that she is financially insulated from the effects of the COVID-19 pandemic. Fowler claims she had to expend financial resources to care for family members who contracted the virus and argues that such expenditures constitute an indirect financial hardship caused by COVID-19. The Court agrees. At the other end of the spectrum, Lewis claims that her hours at work were decreased by her employer as a result of the COVID-19 pandemic. The Court finds that Lewis' reduction in hours is a direct financial hardship resulting from the COVID-19 pandemic. Based on the plain language of § 1329(d), both Fowler and Lewis have cleared the only two hurdles needed to qualify for modification under the CARES Act.

Similar to the situation in *In re Gilbert*, Trustee's opposition to both Fowler and Lewis' respective modifications is based on "pre-COVID-19" defaults in plan payments. In essence, Trustee asks this Court to splice words into the Bankruptcy Code that require debtors to clear a third hurdle in order to qualify for modification under § 1329(d): that only debtors who were current on plan payments on March 27, 2020 can qualify for modification under 11 U.S.C. § 1329(d).

The Court does not find Trustee's argument persuasive. The Court must "respect not only what Congress wrote, but as importantly, what it didn't write." *Va. Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1900 (2016). If Congress intended to limit § 1329(d) modification to debtors who were current on their plan payments prior to the enactment of the CARES Act, it certainly could have done so, but the plain language of the CARES Act does not contain such a restriction. To paraphrase the Supreme Court, "[w]hat the [Trustee] asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial function." *Iselin v. United States*, 270 U.S. 245, 251 (1926).

Case 16-31791   Doc 57   Filed 11/13/20   Entered 11/13/20 16:01:39   Desc Main
Document   Page 9 of 11

As the *Gilbert* Court noted, "nothing in the text of the CARES Act forecloses the relief available under § 1329(d) to those Debtors simply because they were behind in plan payments prior to March 27, 2020." *In re Gilbert*, 2020 WL 5939097 *4 (Bankr. E.D. La. Oct. 6, 2020). Accordingly, the Court declines Trustee's invitation to impose a third hurdle to modification under § 1329(d).

### III.  Conclusion

The Court finds that both Fowler and Lewis have met the requirements for modification of their respective plans under 11 U.S.C. § 1329(d).[7]  Accordingly, it is hereby

**ORDERED** that Trustee's Objection to Confirmation of Debtor, Consoella Randolph Fowler's Modified Chapter 13 Plan is **OVERRULED** and the Motion to Modify is **GRANTED**; It is further

**ORDERED** that Trustee's Objection to Confirmation of Debtor, Anbrial Alexis Lewis' Modified Chapter 13 Plan is **OVERRULED** and the Motion to Modify is **GRANTED**.

Separate orders will enter accordingly.

Done this 13th day of November, 2020.

William R. Sawyer
United States Bankruptcy Judge

---

[7] The Court does note that there is still an outstanding Trustee's Motion to Dismiss in Lewis' case.

c:      Debtor, Consoella Randolph Fowler
        Debtor, Anbrial Alexis Lewis
        David Weston, Attorney for Debtors
        Sabrina L. McKinney, Trustee
        Bankruptcy Administrator
        All Creditors

-11-